1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE A. SALDATE, JR., | CASE NO. CV F 09-2089 LJO SMS |
| Plaintiff, | **ORDER ON DEFENDANT WMC MORTGAGE CORPORATION'S F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 13.) |
| WILSHIRE CREDIT CORPORATION, et al., | |
| Defendants. | |
| _____/ | |

## INTRODUCTION

Defendant WMC Mortgage Corporation ("WMC") seeks to dismiss as meritless and time barred plaintiff George A. Saldate, Jr.'s ("Mr. Saldate's") statutory and common law claims arising from a "residential mortgage" for his Fresno property ("property"). Mr. Saldate filed no papers to oppose dismissal of claims against WMC. This Court considered WMC's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the February 24, 2010 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court DISMISSES this action against WMC.

## BACKGROUND

### Mr. Saldate's Property Loan

Defendant Norfilia Garza ("Ms. Garza") is a loan officer with defendant Valley Wide Home Loans ("Valley Wide") and arranged first and second refinance loans for the property. Mr. Saldate executed a November 4, 2005 deed of trust ("first DOT") to secure a $134,400 loan with the property. The first DOT identifies WMC as lender, Westwood Associates as trustee, and defendant Mortgage

1   Electronic Registration Systems, Inc. ("MERS") as beneficiary.

2      By a Corporate Assignment of Mortgage/Deed of Trust recorded on February 4, 2008,[1] MERS

3   assigned the first DOT to defendant Wells Fargo Bank, N.A. ("Wells Fargo").  By a Substitution of

4   Trustee recorded on April 1, 2008, defendant Quality Loan Service Corporation ("Quality") substituted

5   as trustee for Westwood Associates.  Quality filed a Notice of Default and Election to Sell under Deed

6   of Trust, which was recorded on March 6, 2009.  The property has neither been sold nor advertised for

7   sale.

8                                    **Mr. Saldate's Claims**

9      On December 1, 2009, Mr. Saldate filed his complaint ("complaint") to allege statutory and

10  common law claims (addressed in greater detail below) arising from WMC and other defendants'

11  "negligent, fraudulent and unlawful conduct concerning a residential mortgage loan transaction with the

12  Plaintiff."  The complaint alleges that defendants "developed a scheme to rapidly infuse capital into the

13  home mortgage lending system by selling mortgages on the secondary market, normally three to five

14  times, to create a bankruptcy remote transaction."  According to the complaint, "[n]o legal transfer of

15  the Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property was ever effected that gave

16  any of the Defendants the right to be named a trustee, mortgagee, beneficiary or an authorized agent of

17  trustee, mortgagee or beneficiary of Plaintiff [sic] Mortgage Note, Deed of Trust of any other interest

18  in Plaintiff's Property."  The complaint further alleges that defendants "are not the real parties in interest

19  because they are not the legal trustee, mortgagee or beneficiary, nor are they authorized agents of the

20  trustee, mortgagee or beneficiary, nor are they in possession of the Note, or holders of the Note, or non-

21  holders of the Note entitled to payment."

22     The complaint seeks an injunction on "collecting on the subject Loan and from causing the

23  Property to be sold" and compensatory, statutory and punitive damages.

24                                       **DISCUSSION**

25     WMC characterizes the complaint as "frivolous" to attempt "to challenge the imminent

26  foreclosure" of the property.  WMC notes that the complaint fails to identify the loan and deed of trust

27  _____

28     [1]    All documents pertaining to Mr. Saldate's loans were recorded with the Fresno County Recorder.

                                              2

1   at issue in that the property "is encumbered by at least two deeds of trust" both of which are in default.

2   WMC challenges the complaint's claims as not "plausible" and unable to state a claim even if leave to

3   amend were granted.

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

5        A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

6   forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

7   of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

8   whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

9   support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

10  *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

11  there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

12  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

13  *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

14       In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

15  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

16  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

17  *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

18  true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

19  *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court

20  need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly

21  be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911

22  F.2d 242, 247 (9th Cir. 1990).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

23  not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement

24  to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

25  of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007)

26  (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the

27  light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action."

28  *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint

. . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  (Citation omitted.)

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).  A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2.  In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

/ / /

4

based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2]   A "court may disregard allegations

in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck*

*Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston*

*Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken of a fact to show

that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers,*

*Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th

Cir. 1997).   A court properly may take judicial notice of matters of public record outside the pleadings'"

and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646,

649 (9th Cir. 1988) (citation omitted).   A court need not accept "as true allegations that contradict matters

properly subject to judicial notice." *In re Gilead Sciences Securities Litig.*, 536 F.3d at 1055.

As such, this Court is able to consider Mr. Saldate's pertinent loan and related documents.

## **Truth In Lending Act**

The complaint's first claim seeks relief under the Truth in Lending Act ("TILA"), 15 U.S.C. §§

1601, et seq., and its implementing Regulation Z, 12 C.F.R. §§ 226, et seq.   The claim alleges WMC

violated TILA "by failing to provide required disclosures prior to consummation of the transactions as

required by 15 U.S.C. § 1638, failed to make required disclosures clearly and conspicuously in writing

as required by 15 U.S.C. § 1632(a), 12 C.F.R. § 226.5(a)(1), failed to timely deliver to Plaintiff TILA

notices as required by 15 U.S.C. § 1638(b), and failed to disclose all finance charge details, the annual

percentage rate based upon properly calculated and disclosed finance charges and amounts financed as

defined by 15 U.S.C. § 1602(u)."

### *Time Barred Rescission*

WMC points out that a TILA rescission claim is barred by the three-year limitations period of

15 U.S.C. § 1635(f).

TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without

penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal*

---

[2]         "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document
in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

1  *Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a).  TILA rescission may be

2  extended up to three years if the lender fails to comply with TILA disclosure requirements.  *Semar*, 791

3  F.2d at 701-702; 15 U.S.C. § 1635(f).

4        15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

5        An obligor's right of rescission **shall expire three years after the date of**

6  **consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section

7  or any other disclosures required under this part have not been delivered to the obligor . . . (Bold added.)

8        The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit rescission after

9  the three-year period has run:

10        Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The

11  subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a

12  suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous.

13  There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that

14  provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*,

15  at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

16

17  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998).

18        The complaint alleges that Mr. Saldate's loan was consummated in November 2005 to render

19  his rescission remedy expired no later than November 2008, more than a year prior to filing this action.

20  TILA rescission is time barred.

21  ***TILA Exemption***

22        WMC argues that Mr. Saldate's purchase money mortgage is exempt from TILA rescission.

23        A "residential mortgage transaction" is exempt from TILA rescission.  15 U.S.C. § 1635(e)(1).

24  A "residential mortgage transaction" is defined as "a transaction in which a mortgage, deed of trust,

25  purchase money security interest arising under an installment sales contract, or equivalent consensual

26  security interest is created or retained against the consumer's dwelling to finance the acquisition or initial

27  construction of such dwelling."  15 U.S.C. § 1602(w).

28        WMC correctly notes that courts exempt from TILA rescission purchase money mortgages in

which the borrower acquires his principal residence.  There is no statutory right of rescission "where the loan at issue involves the creation of a first lien to finance the acquisition of a dwelling in which the customer resides or expects to reside."  *Betancourt v. Countrywide Home Loan, Inc.*, 344 F.Supp.2d 1253, 1261 (D. Colo. 2004); *see Watts v. Decision One Mortgage Co., LLC.*, 2009 WL 648669, *4 (S.D. Cal. 2009) (dismissing with prejudice TILA rescission claim in that "while home equity loans and refinancing transactions would be amenable to rescission, Plaintiff's purchase money mortgage is not"); *Karma v. Columbia Home Loans, LLC*, __ F.Supp.2d __, 2009 WL 2230733, *3 (E.D. Pa. 2009) ("Here, it is undisputed that the loan was obtained to finance the acquisition of the plaintiff's dwelling. Rescission therefore is not available for the loan at issue.  This claim is dismissed."); *Wellman v. First Franklin Home Loan Services*, 2009 WL 243961, *2 (S.D. Cal. 2009) ("'residential mortgage transactions' such as Plaintiff's purchase money mortgage, are expressly excluded from coverage"); *Manown v. Cal-Western Reconveyance Corp.*, 2009 WL 2406335, *5 (S.D. Cal. 2009) ("Plaintiffs are not entitled to seek rescission for their purchase money mortgage.")

WMC is correct that Mr. Saldate's purchase money mortgage transaction is not subject to TILA's rescission remedy.  The complaint clearly references Mr. Saldate's loan "to purchase his residence."  The complaint references Mr. Saldate's "residential mortgage loan transaction."  As the complaint alleges, Mr. Saldate's loan is a residential mortgage transaction exempt from TILA rescission.  A TILA rescission claim fails as a matter of law.

### Absence Of Tender And Notice

WMC faults TILA rescission in the absence of Mr. Saldate's tender or offer to tender "the amount due."

The "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan."  *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's

obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) address rescission effects and provides:

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.  (Bold added.)

Neither TILA nor its Regulation Z "'establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit Court of Appeals, relying on *Large*, explained:

Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.  Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds." *Yamamoto*, 329 F.3d at 1172.  "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any."  *Yamamoto*, 329 F.3d at 1172 (italics in original).

8

1    Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest

2  and return of the money within twenty days of the notice of rescission, we believe this assumes that the

3  notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007).

4  A "court may impose conditions on rescission that assure that the borrower meets her obligations once

5  the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173.  The Ninth Circuit has

6  explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may

7  require borrowers to prove ability to repay loan proceeds:

8          As rescission under § 1635(b) is an on-going process consisting of a number of
         steps, there is no reason why a court that may alter the sequence of procedures after
9         deciding that rescission is warranted, may not do so before deciding that rescission is
         warranted when it finds that, assuming grounds for rescission exist, rescission still could
10        not be enforced because the borrower cannot comply with the borrower's rescission
         obligations no matter what. Such a decision lies within the court's equitable discretion,
11        taking into consideration all the circumstances including the nature of the violations and
         the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the
12        evidence that the borrower lacks capacity to pay back what she has received (less interest,
         finance charges, etc.), the court does not lack discretion to do before trial what it could
13        do after.

14  *Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that

15  borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial

16  judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy

17  of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.

18  1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds

19  given the lender's non-egregious TILA violations and equities heavily favoring the lender).[3]

20    Neither the complaint nor record references Mr. Saldate's notice to rescind or tender of

21  indebtedness.  WMC correctly contests Mr. Saldate's attempt to rescind.  The complaint does not

22  address conditions precedent to permit rescission.  The complaint is not a timely, valid rescission notice.

23  _____

24        [3]       The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not
    compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

25        Congress did not intend to require a lender to relinquish its security interest when it is now known that the
         borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender
26        in discharging the prior obligations of the borrowers.

27  *Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

28

                                        9

The complaint's silence on Mr. Saldate's tender of or ability to tender loan proceeds is construed as his concession of inability to do so.  "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *American Mortgage*, 486 F.3d at 820-821.  Without Mr. Saldate's meaningful tender, TILA rescission is an empty remedy, not capable of being granted.  The absence of a sufficiently alleged notice of rescission and tender of loan proceeds dooms a TILA rescission claim to warrant its dismissal.

### *Time Barred Damages*

WMC argues that a TILA damages claim is barred by the one-year limitations period.

A TILA damages claims is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation."  "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176, 1183 (D. Or. 2005).  The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008).  The Ninth Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed.  The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

Mr. Saldate consummated his loan in November 2005 and filed his complaint on December 1, 2009, more than three years after his loan transaction to render a TILA damages claim time barred.

The complaint lacks a viable TILA claim.

### <u>Negligence</u>

The complaint's (third) negligence claim alleges that "WMC directly ordered, authorized and participated in Defendants Valley Wide's, Barton's, and Garza's conduct" to result in WMC's "duty to the Plaintiff to perform acts in such a manner as to not cause Plaintiff harm."  The claim further alleges that "WMC breached their [sic] duty of care to the Plaintiff when they [sic] failed to make the required disclosures to the Plaintiff, failed to maintain the original Mortgage Note, and failed to properly assign

1    or transfer the negotiable instrument(s)."

2           WMC faults the claim's failure to allege a cognizable duty or actionable breach of duty.

3           "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2)

4    breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."

5    *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation

6    omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to

7    establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d

8    1089, 1095, 283 Cal.Rptr. 53 (1991). "The existence of a legal duty to use reasonable care in a particular

9    factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.,*

10   118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

11          "The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care

12   in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the

13   person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is

14   actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm."

15   *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516

16   (1997).

17          There is no actionable duty between a lender and borrower in that loan transactions are arms-

18   length.  A lender "owes no duty of care to the [borrowers] in approving their loan.  Liability to a

19   borrower for negligence arises only when the lender 'actively participates' in the financed enterprise

20   'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161

21   Cal.Rptr. 516 (1980) (citing several cases).  "[A]s a general rule, a financial institution owes no duty of

22   care to a borrower when the institution's involvement in the loan transaction does not exceed the scope

23   of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr.

24   53.

25          "Public policy does not impose upon the Bank absolute liability for the hardships which may

26   befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516.  The success of

27   a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to

28   protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any

1    information it may have had"); *see Copesky v. Superior Court*, 229 Cal.App.3d 678, 694, 280 Cal.Rptr.

2    338 (1991) ("ordinary bank- customer relationship as not a special relationship giving rise to tort

3    remedies when the bank unreasonably, and even in bad faith, denies liability on a contract or interposes

4    spurious defenses").

5          The complaint alleges no facts of WMC's cognizable duty to Mr. Saldate to support a negligence

6    claim. "No such duty exists" for a lender "to determine the borrower's ability to repay the loan. . . . The

7    lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's

8    protection, not the borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006)

9    (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept

10   the loan"). The complaint lacks facts of special circumstances to impose duties on WMC in that the

11   complaint depicts an arms-length loan transaction, nothing more. The complaint fails to substantiate a

12   special lending relationship or an actionable breach of duty to substantiate a negligence claim.

13                              **Real Estate Settlement Procedures Act**

14         The complaint's fourth claim seeks relief under the Real Estate Settlement Procedures Act

15   ("RESPA"), 12 U.S.C. §§ 2601, et seq. The claim alleges that WMC violated RESPA by failing "to

16   provide Plaintiff notice of the assignment, sale, or transfer of servicing rights to Plaintiff's loan"

17   pursuant to 12 U.S.C. § 2605(b) and (c). The claim alleges that WMC further "violated RESPA at the

18   time of the closing of the Loan . . . by failing to correctly and accurately comply with the disclosure

19   requirements" of RESPA and its implementing Regulation X, 24 C.F.R. §§ 3500.1, et seq. The claim

20   further alleges that WMC violated 12 U.S.C. § 2607 by receiving "kickbacks" or referral fees

21   disproportional to work performed.

22         WMC challenges the RESPA claim as time barred, conclusory and "devoid of facts." WMC

23   points to the three-year limitations period of 12 U.S.C. § 2614 to seek damages for 12 U.S.C. § 2605

24   violations. WMC is correct that the complaint lacks sufficient allegations of transfer of Mr. Saldate's

25   loan and that such transfer falls within the three-year limitations period.

26         WMC also points to 12 U.S.C. § 2614's one-year limitations for violations of 12 U.S.C. §§ 2607

27   and 2608. The "primary ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high

28   settlement charges' caused by kickbacks, fee-splitting, and other practices that suppress price

competition for settlement services.  This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing." *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. §2601(a)).    Mr. Saldate closed his loan well more than a year prior to the complaint's December 1, 2009 filing to bar 12 U.S.C. §§ 2607 and 2608 claims.

A purported RESPA claim fails.

### Breach Of Fiduciary Duty

The complaint's (fifth) breach of fiduciary duty claim alleges that defendants "breached their fiduciary duty and duty of loyalty by obtaining a mortgage loan for [Mr. Saldate] that had unfavorable terms and that he could not untimely afford, by not disclosing the negative consequences of said loan, by securing a secret profit for themselves, by not properly complying with TILA and RESPA requirements, and by engaging in unfair business practices."

WMC faults the complaint's failure to allege a cognizable fiduciary duty.

"[T]o plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101, 3 Cal.Rptr.2d 236 (1991).

"The relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 1093, n. 1, 283 Cal.Rptr. 53 (1991) (citing *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)).   A commercial lender is entitled to pursue its own economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53(citing *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)).

Absent "special circumstances" a loan transaction is "at arms-length and there is no fiduciary relationship between the borrower and lender."  *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006) ("the bank is in no sense a true fiduciary"); *see Downey v. Humphreys,* 102 Cal.App.2d 323, 332, 227 Cal.Rptr. 484 (1951) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.").  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction

13

1  does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d

2  at 1096, 283 Cal.Rptr. 53.

3       The complaint alleges no facts to support a fiduciary relationship.  The complaint's mere

4  references to "fiduciary duty," "duty of loyalty" and the loan transaction are insufficient to impose a

5  fiduciary relationship on WMC.  The breach of fiduciary duty claim fails.

6  **Fraud**

7       The complaint's (sixth) fraud claim alleges that "WMC regularly trained, directed, authorized

8  and participated with mortgage brokers to implement this fraudulent scheme, training brokers and loan

9  officers to direct unsuspecting borrowers into toxic loan [sic], giving brokers direction as to which toxic

10  loans to direct borrowers into, directing their underwriters to approve loans to these unqualified

11  borrowers and giving the brokers and loan officers monetary incentives to violate the borrowers' trust."

12       WMC challenges the fraud claim's lack of particularity and reliance on a "misconstrued theory"

13  that defendants developed a scheme to fraudulently induce Mr. Saldate to enter into a transaction to pool

14  and sell mortgages.  WMC points to the absence of allegations of WMC's knowledge of a scheme.

15       The elements of a California fraud claim are: (1) misrepresentation (false representation,

16  concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

17  to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

18  631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent

19  misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

20  *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

21       "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

22  specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

23  156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce

24  the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

25  actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

26  *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements

27  will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

28  Cal.Rptr. 355 (1986).

14

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[4] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107. A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P. 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .

---

[4]   F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Ca. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Ca. 1988)). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

Moreover, in a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

The complaint is severely lacking and fails to satisfy F.R.Civ.P. 9(b) "who, what, when, where and how" requirements as to WMC. The complaint makes no effort to allege names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. The WMC fails to substantiate the circumstances alleging

1   falseness attributable to WMC.  The complaint lacks facts to support each fraud element.  The fraud

2   claim's deficiencies are so severe to suggest no potential improvement from an attempt to amend.

3                                          **Unfair Competition Law**

4          The complaint's seventh claim alleges that "WMC's violation of TILA, RESPA, their [sic]

5   negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of

6   good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business

7   practices," as defined in California Business and Professions Code, §§ 17200 et seq. (Unfair Competition

8   Law ("UCL")).

9          "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and

10  unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr.

11  718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair

12  competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group,*

13  *Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).  An "unlawful business activity" includes

14  anything that can properly be called a business practice and that at the same time is forbidden by law.

15  *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159

16  Cal.Rptr. 811, 602 P.2d 731 (1979)).

17         The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state,

18  or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832,

19  838, 33 Cal.Rptr.2d 548 (1999).  According to the California Supreme Court, the UCL "borrows"

20  violations of other laws and treats them as unlawful practices independently actionable under the UCL.

21  *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992).

22         "Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law,

23  or violates the policy or spirit of one of those laws because its effects are comparable to or the same as

24  a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech*

25  *Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548 (1999).

26         The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members

27  of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,*

28  178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be

                                                   17

1   deceived." *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673,

2   at *5 (N.D. Cal. 2005).

3   "A plaintiff alleging unfair business practices under these statutes [UCL] must state with

4   reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's*

5   *of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

6   A fellow district court has explained the borrowing of a violation of law other than the UCL:

7   To state a claim for an "unlawful" business practice under the UCL, a plaintiff
    must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles*
8   *Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)
    (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows'
9   violations of other law and treats them as unlawful practices that the unfair competition
    law makes independently actionable.") (citation omitted). Where a plaintiff cannot state
10  a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith*
    *v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d
11  399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her
    TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA
12  has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

13  *Rubio v. Capital One Bank (USA), N.A.*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

14  WMC is correct that Mr. Saldate "has not properly alleged any violations as to any 'borrowed'

15  statute." In the absence of violation of TILA, RESPA or other borrowed law, a UCL claim fails. The

16  complaint points to no predicate violation of law. The complaint is deficient to allege that WMC

17  engaged in unfair practices subject to the UCL. The complaint lacks reasonable particularity of facts to

18  support a UCL claim. The complaint's bare reference to TILA, RESPA and common law claims

19  provides not the slightest inference that Mr. Saldate has a viable UCL claim. Similar to the fraud claim,

20  the UCL claim lacks particularity of fraudulent circumstances, such as a misrepresentation, for a UCL

21  claim. The complaint lacks allegations of ongoing wrongful business conduct or a pattern of such

22  conduct. The complaint lacks facts to hint at a wrong subject to the UCL to warrant the UCL claim's

23  dismissal against WMC.

24  **Breach Of Contract/Rescission**

25  The complaint's eighth claim is entitled "Breach of Contract or in the Alternative Rescission of

26  Contract." The claim alleges that WMC and other defendants "breached their agreement with Plaintiff"

27  by failing to:

28  1.   "[E]xercise reasonable efforts and due diligence as promised, thus failing to provide

18

1           Plaintiff with an affordable loan";

2           2.      "[O]btain payment and interest rates as promised";

3           3.      "[S]ubmit an accurate loan application";

4           4.      "[P]rovide loan documents for Plaintiff's review prior to closing";

5           5.      "[E]xplain the loan documents to the Plaintiff"; and

6           6.      "[R]efinance the mortgage as promised."

7           WMC faults the claims failure to allege or identify a contract and elements for the claim.

8           "The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's

9    performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff

10   therefrom.'"    *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal.App.4th 1171, 1178, 80

11   Cal.Rptr.3d 6 (2008).

12          "As to the contract, where a written instrument is the foundation of a cause of action, it may be

13   pleaded in haec verba by attaching a copy as an exhibit and incorporating it by proper reference." *Byrne

14   v. Harvey,* 211 Cal.App.2d 92, 103, 27 Cal.Rptr. 110 (1962); *Holly Sugar Corp. v. Johnson,* 18 Cal.2d

15   218, 225, 115 P.2d 8 (1941).  "Where a party relies in his complaint upon a contract in writing, and it

16   affirmatively appears that all the terms of the contract are not set forth in hæc verba, nor stated in their

17   legal effect, but that a portion which may be material has been omitted, the complaint is insufficient."

18   *Gilmore v. Lycoming Fire Ins. Co.*, 55 Cal. 123, 124 (1880).

19          WMC is correct that the complaint fails to allege breach of contract elements.  Without

20   specification of a contract or agreement, the elements necessarily fail.  Moreover, the claim fails to the

21   extent the complaint alleges breach of the promissory note in that Mr. Saldate is in default.  Lastly, "it

22   is unhelpful to analyze trust deed nonjudicial foreclosure sales issues in the context of common law

23   contract principles" in that "trust deed nonjudicial foreclosure sales are comprehensively regulated by

24   the detailed statutory scheme set forth in [Cal. Civ. Code] section 2924 et seq., which is not based on

25   common law contract principles."  *Residential Capital v. Cal-Western Reconveyance Corp.*, 108

26   Cal.App.4th 807, 821-822, 134 Cal.Rptr.2d 162 (2003).  A "case should be decided on principles of

27   interpretation of the statutory scheme setting forth the rules of trust deed nonjudicial foreclosure sales."

28   *Residential Capital*, 108 Cal.App.4th at 822, 134 Cal.Rptr.2d 162.  Common law breach of contract

1  remedies are unavailable to Mr. Saldate.

2      In addition, rescission is unavailable as to WMC in that the complaint fails to allege that Mr.

3  Saldate has tendered loan proceeds and Mr. Saldate's secured obligation has been assigned to Wells

4  Fargo.

5      "A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds*

6  *Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

7  Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

8  (1971)).  "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds*

9  *Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.

10      A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

11  indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah*

12  *v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S.

13  1081, 117 S.Ct. 746 (1997).  In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018,

14  1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal has explained:

15          . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or
           procedure should be accompanied by an offer to pay the full amount of the debt for
16          which the property was security." . . . . This rule . . . is based upon the equitable maxim
           that a court of equity will not order a useless act performed. . . . "A valid and viable
17          tender of payment of the indebtedness owing is essential to an action to cancel a voidable
           sale under a deed of trust." . . .  The rationale behind the rule is that if plaintiffs could not
18          have redeemed the property had the sale procedures been proper, any irregularities in the
           sale did not result in damages to the plaintiffs.  (Citations omitted.)
19

20      An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state

21  a cause of action which a court of equity recognizes.  *Karlsen v. American Sav. & Loan Assn.*, 15

22  Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971).  The basic rule is that an offer of performance is of no

23  effect if the person making it is not able to perform.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851

24  (citing Cal. Civ. Code, § 1495.)  Simply put, if the offeror "is without the money necessary to make the

25  offer good and knows it" the tender is without legal force or effect.  *Karlsen*, 15 Cal.App.3d at118, 92

26  Cal.Rptr. 851 (citing several cases).

27      Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do

28  equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the

1    plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter

2    into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d

3    791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing

4    is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,

5    92 Cal.Rptr. 851.

6         "The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105

7    Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is

8    necessary on his part to complete the transaction, and must fairly make known his purpose without

9    ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is

10   made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154,

11   1165, 246 Cal.Rptr. 421 (1988).

12        The absence of an allegation of ability to tender amounts owed dooms a rescission claim.  Mr.

13   Saldate's inability to make monthly note payments reflects inability to tender amounts owed to bar Mr.

14   Saldate's requested rescission relief.  Challenging the loan transaction without a tender is useless to

15   render a rescission claim meritless and subject to dismissal.

16                    **Breach Of The Implied Covenant Of Good Faith And Fair Dealing**\

17        The complaint's ninth claim alleges WMC and other defendants breached the "implied duty of

18   good faith and fair dealing owed to Plaintiff" by:

19        1.    "Failing to pay at least as much regard to Plaintiff's interests as to Defendants' interests";

20        2.    "Failing to disclose to Plaintiff the true nature of the loan that is the subject of this

21              action";

22        3.    "Failing to give Plaintiff the requisite notice and disclosures"; and

23        4.    "Direct[ing] Plaintiff into a toxic loan."

24        WMC faults the claim's failure to allege terms of a contract between Mr. Saldate and WMC from

25   which the covenant of good faith and fair dealing may be implied.

26        "There is an implied covenant of good faith and fair dealing in every contract that neither party

27   will do anything which will injure the right of the other to receive the benefits of the agreement."

28   *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000)

21

(quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)).  "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract."  *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 49, 275 Cal.Rptr. 17 (1990).  "Without a contractual relationship, [plaintiffs] cannot state a cause of action for breach of the implied covenant."  *Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17.

The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract."  *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted.)  "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself."  *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008).  "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'"  *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).

The complaint fails to allege or identify a contract to invoke an implied covenant to impose on WMC liability for alleged wrongs.  The complaint lacks an alleged breach to invoke the implied covenant of good faith and fair dealing.  Mr. Saldate is unable to resort to an implied covenant to manufacture WMC obligations which do not exist.

Moreover, even in the absence of a stated implied covenant claim, no implied covenant tort is available to Mr. Saldate.  "Generally, no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'"  *Pension Trust Fund v. Federal Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (applying California law).  "Moreover, even if there were a contractual relationship between the parties, [plaintiffs] have pled no facts establishing a 'special relationship' between them which could justify extending tort liability for bad faith to the present context."  *Smith*, 225 Cal.App.3d at 49, 275 Cal.Rptr. 17.

The "implied covenant tort is not available to parties of an ordinary commercial transaction

1  where the parties deal at arms' length." *Pension Trust Fund*, 307 F.3d at 955.  California courts do not

2  invoke a special relationship between a lender and borrower.  *See Kim v. Sumitomo Bank*, 17

3  Cal.App.4th 974, 979, 21 Cal.Rptr.2d 834 (1993) ("the relationship of a bank-commercial borrower does

4  not constitute a special relationship for the purposes of the covenant of good faith and fair dealing");

5  *Mitsui Manufacturers Bank v. Superior Court*, 212 Cal.App.3d 726, 729, 260 Cal.Rptr. 793 (1989)

6  (borrower precluded to assert tortious breach of implied covenant of good faith and fair dealing claim

7  against lender).  As discussed above, a lender generally owes no fiduciary duty to a borrower unless "it

8  excessively controls or dominates the borrower." *Pension Trust Fund*, 307 F.3d at 955.

9       WMC's loan to Mr. Saldate was a typical home mortgage to create nothing more than a ordinary

10  lender-borrower relationship.  No special relationship arises between WMC and Mr. Saldate.  The

11  complaint makes no attempt to allege such a special relationship with meaningful facts.  A breach of

12  implied covenant of good faith and fair dealing claim fails in absence of allegations of a sufficient

13  contractual or special relationship between WMC and Mr. Saldate.

14                              **Attempt At Amendment And Malice**

15       Mr. Saldate's claims against WMC are insufficiently pled and barred as a matter of law.  Mr.

16  Saldate is unable to cure his claims by allegation of other facts and thus is not granted an attempt to

17  amend.

18       Moreover, this Court is concerned that Mr. Saldate has brought this action in absence of good

19  faith and that Mr. Saldate exploits the court system solely for delay or to vex WMC.  The test for

20  maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

21  applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795

22  F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has

23  inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of

24  good faith or malice also can be inferred from a complaint containing untrue material allegations of fact

25  or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

26  Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action against WMC.

27                              **CONCLUSION AND ORDER**

28       For the reasons discussed above, this Court:

                                        23

1      1.      DISMISSES with prejudice this action against WMC;

2      2.      DIRECTS the clerk to enter judgment in favor of defendant WMC Mortgage Corporation

3              and against plaintiff George A. Saldate, Jr. in that there is no just reason to delay to enter

4              such judgment given that Mr. Saldate's claims against WMC are clear and distinct from

5              claims against the other defendants.  *See* F.R.Civ.P. 54(b); and

6      3.      ORDERS Mr. Saldate's counsel, no later than February 22, 2010 to file papers to show

7              cause why this Court should not dismiss this action against defendants Valley Wide

8              Home Loans, Craig H. Barton and Norfilia Garza.

9          **This Court ADMONISHES Mr. Saldate and his counsel that this Court will dismiss this**

10   **action against defendants Valley Wide Home Loans, Craig H. Barton and Norfilia Garza if Mr.**

11   **Saldate's counsel fails to comply with this order and fails to file timely papers to show cause why**

12   **this Court should not dismiss this action against defendants Valley Wide Home Loans, Craig H.**

13   **Barton and Norfilia Garza.**

14          IT IS SO ORDERED.

15   **Dated:   February 11, 2010              /s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE