1
2
3
4
5
6
7
8

9          **IN THE UNITED STATES DISTRICT COURT**

10        **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12   GEORGE A. SALDATE, JR.,                    CASE NO. CV F 09-2089 LJO SMS

13                    Plaintiff,                **ORDER ON DEFENDANT QUALITY LOAN**
                                                **SERVICE CORPORATION'S F.R.Civ.P. 12**
14        vs.                                   **MOTION TO DISMISS**
                                                (Doc. 21.)
15   WILSHIRE CREDIT CORPORATION,
     et al.,
16
                     Defendants.
17   _____/

18                              **INTRODUCTION**

19        Defendant deed of trust trustee Quality Loan Service Corporation ("Quality") seeks to dismiss

20   as meritless and conclusory plaintiff George A. Saldate, Jr.'s ("Mr. Saldate's") California common law

21   and statutory claims arising from foreclosure of a "residential mortgage" on his Fresno property

22   ("property").  Mr. Saldate filed no papers to oppose Quality's dismissal.  This Court considered

23   Quality's F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the March 2, 2010

24   hearing, pursuant to Local Rule 230(c), (g).  For the reasons discussed below, this Court DISMISSES

25   this action against Quality.

26                              **BACKGROUND**

27                    **Mr. Saldate's Property Loan And Default**

28        On November 4, 2005, Mr. Saldate obtained a $134,000 loan secured by a deed of trust on the

                                        1

1  property and which was recorded on November 22, 2005.[1]

2        After Mr. Saldate failed to make payments on the loan, a notice of default and election to sell

3  under deed of trust was recorded on March 6, 2009.  Thereafter, Quality was substituted as the deed of

4  trust trustee.

5        On June 10, 2009 with Mr. Saldate's continuing loan default, Quality recorded a notice of

6  trustee's sale for the property, but the sale was postponed.

7                              **Mr. Saldate's Claims**

8        On December 1, 2009, Mr. Saldate filed his complaint ("complaint") to allege statutory and

9  common law claims (addressed in greater detail below) arising from Quality and other defendants'

10  "negligent, fraudulent and unlawful conduct concerning a residential mortgage loan transaction with the

11  Plaintiff."  The complaint alleges that Quality and other defendants "developed a scheme to rapidly

12  infuse capital into the home mortgage lending system by selling mortgages on the secondary market,

13  normally three to five times, to create a bankruptcy remote transaction."  According to the complaint,

14  "[n]o legal transfer of the Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property was

15  ever effected that gave any of the Defendants the right to be named a trustee, mortgagee, beneficiary or

16  an authorized agent of trustee, mortgagee or beneficiary of Plaintiff [sic] Mortgage Note, Deed of Trust

17  of any other interest in Plaintiff's Property."  The complaint further alleges that moving and other

18  defendants "are not the real parties in interest because they are not the legal trustee, mortgagee or

19  beneficiary, nor are they authorized agents of the trustee, mortgagee or beneficiary, nor are they in

20  possession of the Note, or holders of the Note, or non-holders of the Note entitled to payment."

21        The complaint seeks an injunction on "collecting on the subject Loan and from causing the

22  Property to be sold" and compensatory, statutory and punitive damages.

23                              **DISCUSSION**

24                          **F.R.Civ.P. 12(b)(6) Standards**

25        Quality seeks to dismiss this action based on the complaint's "sweeping legal conclusions"

26  without "concrete factual allegations" to demonstrate wrongful foreclosure of the property or that Mr.

27  _____

28        [1]   All pertinent documents pertaining to Mr. Saldate's loan, default and property foreclosure were recorded with the Fresno County Recorder.

2

1   Saldate "is entitled to relief."

2       A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set

3   forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception

4   of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not

5   whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

6   support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco*

7   *Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where

8   there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

9   cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

10  *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

11      In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

12  most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

13  whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty*

14  *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as

15  true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

16  *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court

17  need not permit an attempt to amend if "it is clear that the complaint could not be saved by an

18  amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

19  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

20  allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

21  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

22  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

23  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

24  plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

25  *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

26  direct or inferential allegations respecting all the material elements necessary to sustain recovery under

27  some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

28  *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft*, __ U.S. __, 129 S.Ct. at 1949-1950.

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their

1   claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2]   A "court may disregard

2   allegations in the complaint if contradicted by facts established by exhibits attached to the complaint."

3   *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning*

4   *v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken

5   of a fact to show that a complaint does not state a cause of action."   *Sears, Roebuck & Co. v.*

6   *Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los*

7   *Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).   A court properly may take judicial notice of matters of

8   public record outside the pleadings and consider them for purposes of the motion to dismiss.   *Mir v.*

9   *Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

10        As such, this Court is able to consider Mr. Saldate's pertinent loan and foreclosure documents.

11                            **Failure To Tender Indebtedness**

12        Quality seeks to dismiss the negligence, fraud, California Business & Professions Code, §§

13   17200, et al. ("Unfair Competition Law ["UCL"]"), and wrongful foreclosure claims against it on

14   grounds that the complaint fails to allege Mr. Saldate's tender of amounts he owes on his loan.   Quality

15   invokes the "tender rule" to require a defaulted borrower to "first do equity" prior to requesting this

16   Court "to exercise its equitable powers to stop or set aside foreclosure proceedings."

17        "A tender is an offer of performance made with the intent to extinguish the obligation."   *Arnolds*

18   *Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ.

19   Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414

20   (1971)).   "A tender must be one of full performance . . . and must be unconditional to be valid."   *Arnolds*

21   *Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.

22        A defaulted borrower is "required to allege tender of the amount of [the lender's] secured

23   indebtedness in order to maintain any cause of action for irregularity in the sale procedure."   *Abdallah*

24   *v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S.

25   1081, 117 S.Ct. 746 (1997).   In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018,

26
27
28
        [2]        "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document
in the complaint."   *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495.) Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt"). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna,* 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the

1    plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter

2    into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d

3    791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing

4    is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,

5    92 Cal.Rptr. 851.  Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common

6    law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating

7    nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108

8    Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

9          "The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105

10    Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is

11    necessary on his part to complete the transaction, and must fairly make known his purpose without

12    ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is

13    made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154,

14    1165, 246 Cal.Rptr. 421 (1988).  The debtor bears "responsibility to make an unambiguous tender of

15    the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney*, 200

16    Cal.App.3d at 1165, 246 Cal.Rptr. 421.

17          Neither the complaint nor record references Mr. Saldate's tender of indebtedness.  The

18    complaint's silence on Mr. Saldate's tender of or ability to tender loan proceeds is construed as his

19    concession of inability to do so.  Without Mr. Saldate's meaningful tender, Mr. Saldate seeks empty

20    remedies, not capable of being granted.  The claims against Quality are subject to dismissal in the

21    absence of a sufficiently alleged tender of loan proceeds.

22                                          **Negligence**

23          The caption of the complaint's (third) negligence claim notes that it is "Against all Defendants."

24    However, the claim neither references Quality nor articulates Quality's breach of an actionable duty.

25    Quality notes the absence of its "special" duty to Mr. Saldate to impose negligence liability on Quality.

26                                    ***Limited Trustee Duties***

27          "Financing or refinancing of real property is generally accomplished in California through a deed

28    of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an

7

1    interest in the property to the lender (beneficiary) as security for repayment of the loan." *Bartold v.*

2    *Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A deed of trust "entitles

3    the lender to reach some asset of the debtor if the note is not paid." *Alliance Mortgage Co. v. Rothwell,*

4    10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

5         If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

6    may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237,

7    286 P. 693 (1930).

8         An "ordinary trust deed conveys the legal title to the trustee only so far as may be necessary to

9    the execution of the trust." *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973).

10   A deed of trust "carries none of the incidents of ownership of the property, other than the right to convey

11   upon default on the part of the debtor in the payment of his debt." *Lupertino*, 35 Cal.App.3d at 748, 111

12   Cal.Rptr. 112 (quoting *Bank of Italy, etc. Assn. v. Bentley,* 217 Cal. 644, 656, 20 P.2d 940 (1933)).  The

13   California Court of Appeal has explained a deed of trust trustee's limited authority:

14        The trustee under a deed of trust "is not a true trustee, and owes no fiduciary
          obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed
15        of trust. [The trustee's] only duties are: (1) upon default to undertake the steps necessary
          to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the
16        deed of trust." (*Vournas v. Fidelity National Title Ins. Co.* (1999) 73 Cal.App.4th 668,
          677, 86 Cal.Rptr.2d 490.) Consistent with this view, California courts have refused to
17        impose duties on the trustee other than those imposed by statute or specified in the deed
          of trust. As our Supreme Court noted in *I.E. Associates v. Safeco Title Ins. Co.* (1985)
18        39 Cal.3d 281, 216 Cal.Rptr. 438, 702 P.2d 596, "The rights and powers of trustees in
          nonjudicial foreclosure proceedings have long been regarded as strictly limited and
19        defined by the contract of the parties and the statutes.... [¶] ... [T]here is no authority for
          the proposition that a trustee under a deed of trust owes any duties with respect to
20        exercise of the power of sale beyond those specified in the deed and the statutes." ( Id.
          at pp. 287-288, 216 Cal.Rptr. 438, 702 P.2d 596.)

21

22   *Heritage Oaks Partners v. First American Title Ins. Co.,* 155 Cal.App.4th 339, 345, 66 Cal.Rptr.3d 510

23   (2007); *see Monterey SP Partnership v. WL Bangham*, 49 Cal.3d 454, 462-463, 261 Cal.Rtpr. 587

24   (1989) ("The similarities between a trustee of an express trust and a trustee under a deed of trust end

25   with the name. . . .  the trustee under a deed of trust does not have a true trustee's interest in, and control

26   over, the trust property. Nor is it bound by the fiduciary duties that characterize a true trustee.")

27        A "trustee has a general duty to conduct the sale 'fairly, openly, reasonably, and with due

28   diligence,' exercising sound discretion to protect the rights of the mortgagor and others." *Hatch v.*

8

1  *Collins,* 225 Cal.App.3d 1104, 1112, 275 Cal.Rptr. 476 (1990)(citation omitted).

2     The complaint lacks facts to support a duty owed and breached by Quality to warrant dismissal

3  of the negligence claim against Quality.

4                          ***Absence Of Other Duty Of Care***

5     Quality argues that it owes no tort duty in general to Mr. Saldate for a negligence claim.

6     "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2)

7  breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury."

8  *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation

9  omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to

10 establishing a claim for negligence." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d

11 1089, 1095, 283 Cal.Rptr. 53 (1991).  "The existence of a duty of care toward an interest of another

12 worthy of legal protection is the essential prerequisite to a negligence cause of action, determined as a

13 matter of law by the court."  *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.,* 49

14 Cal.App.4th 472, 478, 56 Cal.Rptr.2d 756 (1996) (citing *Bily v. Arthur Young & Co.,* 3 Cal.4th 370, 397,

15 11 Cal.Rptr.2d 51 (1992)).  "The existence of a legal duty to use reasonable care in a particular factual

16 situation is a question of law for the court to decide."  *Vasquez v. Residential Investments, Inc.,* 118

17 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

18     "The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care

19 in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the

20 person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is

21 actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm."

22 *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516

23 (1997).

24     Quality correctly notes the absence of an actionable duty between it and Mr. Saldate arising from

25 Quality's role as deed of trust trustee.  The complaint alleges no facts of Quality's cognizable duty to

26 Mr. Saldate to support a negligence claim.  Mr. Saldate's purported negligence claim arises from his

27 failure to pay his loan and to tender his indebtedness.  As a reminder, the rationale behind the tender rule

28 "is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any

1   irregularities in the sale did not result in damages to the plaintiffs." *FPCI RE-HAB 01 v. E & G*

2   *Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989).  In absence of a legitimate

3   tender, Mr. Saldate has not and cannot plead damages arising from notice or service problems, especially

4   given his failure to make payments.

5          The complaint further lacks facts of special circumstances to impose duties on Quality.  A lender

6   "owes no duty of care to the [borrowers] in approving their loan.  Liability to a borrower for negligence

7   arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the

8   usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing

9   several cases).  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the

10  institution's involvement in the loan transaction does not exceed the scope of its conventional role as a

11  mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53.

12         "Public policy does not impose upon the Bank absolute liability for the hardships which may

13  befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516.  The success of

14  a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to

15  protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any

16  information it may have had").

17         Quality correctly equates itself as "financial institution" in that the complaint fails to identify

18  Quality or the other defendants' actions "beyond their traditional roles."  The complaint fails to

19  substantiate a special relationship with Quality or an actionable breach of duty to warrant dismissal of

20  the negligence claim against Quality.

21                                            **<u>Fraud</u>**

22         The complaint's (sixth) fraud claims alleges that Quality misrepresented that "Quality was

23  entitled to enforce the security interest and has the right to institute a non-judicial foreclosure" in that

24  Quality lacked "the right to initiate foreclosure."

25         Quality challenges the fraud claim's lack of particularity to satisfy F.R.Civ.P. 9(b) and

26  insufficient "general allegations of misrepresentation."

27         The elements of a California fraud claim are: (1) misrepresentation (false representation,

28  concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

1   to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

2   631, 638, 49 Cal.Rptr.2d 377 (1996).   The same elements comprise a cause of action for negligent

3   misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

4   *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

5        "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

6   specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

7   156, 53 Cal.Rptr.2d 336 (1996).   There must be a showing "that the defendant thereby intended to induce

8   the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

9   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." 

10  *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.   "The absence of any one of these required elements

11  will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

12  Cal.Rptr. 355 (1986).

13       F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[3]

14  In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s

15  particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.

16  Cal. 2003).   A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P.

17  9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.   A motion to dismiss a claim

18  "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional

19  equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at

20  1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of

21  the claim showing that the pleader is entitled to relief."

22       F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's

23  requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of

24  unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires

25

26       [3]        F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court
    will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the
27  Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess
    v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.
28  1995)(italics in original)).

"specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)).   The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud.  The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud.  The statement in question must be false to be fraudulent.  Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .  The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

As to multiple fraud defendants, a plaintiff "must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Ca. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Ca. 1988)).  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds*

1   *Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)).  "In the context of a fraud suit involving

2   multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the

3   alleged fraudulent scheme." *Swartz*, 476 F.3d at 765 (quoting *Moore v. Kayport Package Express, Inc.*,

4   885 F.2d 531, 541 (9th Cir. 1989)).

5        Moreover, in a fraud action against a corporation, a plaintiff must "allege the names of the

6   persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke,

7   what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*

8   2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

9        The complaint is severely lacking and fails to satisfy F.R.Civ.P. 9(b) "who, what, when, where

10  and how" requirements as to Quality.   The complaint makes bare reference to a general

11  misrepresentation with no required details.   The complaint makes no effort to allege names of the

12  persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke,

13  what they said or wrote, and when it was said or written.  The complaint fails to substantiate the

14  circumstances alleging falseness attributable to Quality. The complaint lacks facts to support each fraud

15  element.  The fraud claim's deficiencies are so severe to suggest no potential improvement from an

16  attempt to amend.

17                              **UCL Claim**

18       The complaint's (seventh) UCL claim alleges that Quality's "negligence, fraud and illegal

19  foreclosure activities . . . constitute unlawful, unfair, and/or fraudulent business practices, as defined in

20  the California Business and Professions Code § 17200 et seq."

21                               ***Standing***

22       Quality challenges Mr. Saldate's standing to pursue a UCL claim in the absence of damages in

23  that Mr. Saldate "defaulted on his mortgage, and continues to possess the Property rent-free long after

24  his initial default."

25       California Business and Professions Code section 17204 limits standing to bring a UCL claim

26  to specified public officials and a private person "who has suffered injury in fact and has lost money or

27  property as a result of the unfair competition."

28       Business and Professions Code section 17203 addresses UCL relief and provides in pertinent

                                        13

1  part:

2      Any person who engages, has engaged, or proposes to engage in unfair competition may be
   enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as
3  may be necessary to restore to any person in interest any **money or property**, real or personal, which
   may have been acquired by means of such unfair competition.  (Bold added.)

4

5      "In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's

6  remedies are 'generally limited to injunctive relief and restitution.'"  *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

7  950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

8  *Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

9      Quality correctly notes the complaint's absence of facts of Mr. Saldate's money or property

10 allegedly lost due to a UCL violation.  The UCL claim offers an insufficient, bare allegation that

11 "Plaintiff has suffered various damages and injuries according to proof at trial."  The complaint lacks

12 sufficient allegations of Mr. Saldate's standing to warrant dismissal of the UCL claim.

13                    ***Unfair, Fraudulent Or Deceptive Business Practices***

14     Quality challenges the complaint's absence of allegations of wrongdoing to support a UCL claim.

15     "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and

16 unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr.

17 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair

18 competition – "acts or practices which are unlawful, or unfair, or fraudulent."  *Shvarts v. Budget Group,*

19 *Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).  An "unlawful business activity" includes

20 anything that can properly be called a business practice and that at the same time is forbidden by law.

21 *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159

22 Cal.Rptr. 811, 602 P.2d 731 (1979)).  "A business practice is 'unlawful' if it is 'forbidden by law.'"

23 *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002)

24 (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

25     The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state,

26 or municipal, statutory, regulatory, or court-made."  *Saunders v. Superior Court*, 27 Cal.App.4th 832,

27 838, 33 Cal.Rptr.2d 548 (1999).  The UCL "thus creates an independent action when a business practice

28 violates some other law."  *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79.  According to the

                                              14

California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992).

A fellow district court has explained the borrowing of a violation of law other than the UCL:

> To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank (USA), N.A.*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications*, 20 Cal.4th 163 at 187, 83 Cal.Rptr.2d 548.

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,* 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived." *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

The complaint is insufficient to establish that Quality engaged in unfair business practices under the UCL. In the absence of violation of a borrowed law, a UCL claim fails in that it cannot rest on alleged irregularities in the loan transaction or aborted foreclosure proceedings. The complaint points to no predicate violation of law. The complaint lacks reasonable particularity of facts to support a UCL claim. The complaint's bare reference to federal statutes and common law claims provides not the

1   slightest inference that Mr. Saldate has a viable UCL claim.  Similar to the fraud claim, the UCL claim

2   lacks particularity of fraudulent circumstances, such as a misrepresentation, for a UCL claim.  The

3   complaint lacks allegations of ongoing wrongful business conduct or a pattern of such conduct.  The

4   complaint lacks facts to hint at a wrong subject to the UCL to warrant the UCL claim's dismissal against

5   Quality.

6                                              **Wrongful Foreclosure**

7          The complaint's (tenth) wrongful foreclosure claim alleges that Quality is not entitled to utilize

8   non-judicial foreclosure "to wrongfully convert Plaintiff's Property" in the absence of possession of Mr.

9   Saldate's promissory note.  The claim also accuses "defendants" of failure "to give proper notice of the

10  Notice of Default."

11         Quality criticizes the complaint's lack of promissory note possession "theory" as "additional

12  steps" outside the scope of California statutes governing non-judicial foreclosure.

13         As a reminder, "[f]inancing or refinancing of real property is generally accomplished in

14  California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust,

15  thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of

16  the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A

17  deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance*

18  *Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

19         If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

20  may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237,

21  286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the

22  applicable California Civil Code sections:

23              The comprehensive statutory framework established to govern nonjudicial
            foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating
24          to notice and right to cure. It would be inconsistent with the comprehensive and
            exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another
25          unrelated cure provision into statutory nonjudicial foreclosure proceedings.

26  *Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins.*

27  *Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of

28  the power of sale contained in a deed of trust.")

                                                    16

1    Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of

2   their authorized agents" may conduct the foreclosure process.  Under California Civil Code section

3   2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent

4   for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed

5   substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the

6   beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25

7   Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

8    A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where

9   there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale

10   contained in a mortgage or deed of trust."  *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323

11   (1970).

12    "Under Civil Code section 2924, no party needs to physically possess the promissory note."

13   *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, §

14   2924(a)(1)).  Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and

15   election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.  An "allegation that

16   the trustee did not have the original note or had not received it is insufficient to render the foreclosure

17   proceeding invalid."  *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

18    Mr. Saldate's challenge to produce his original note is unsupported.  The complaint alleges no

19   facts of failure to comply with the statutory scheme for non-judicial foreclosure.  A purported unlawful

20   foreclosure claim fails as a matter of law.

21    **Attempt At Amendment And Malice**

22    Mr. Saldate's claims are insufficiently pled, meritless and barred as a matter of law.  Mr. Saldate

23   is unable to cure his claims by allegation of other facts and thus is not granted an attempt to amend.

24    Moreover, this Court is concerned that Mr. Saldate has brought this action in absence of good

25   faith and that Mr. Saldate exploits the court system solely for delay or to vex Quality.  The test for

26   maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

27   applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795

28   F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has

17

1   inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of

2   good faith or malice also can be inferred from a complaint containing untrue material allegations of fact

3   or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

4   Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action against Quality.

5                                    **Admonishment To Mr. Saldate's Counsel**

6          This Court has noticed a pattern with Mr. Saldate's counsel Sharon Lapin.  The pattern is the

7   filing of spurious actions, the same actions for different parties, that result in dismissals.  The litigation

8   is an obvious attempt to buy time for clients, i.e. misuse the legal system.  If the Court sees any further

9   such activity, Ms. Lapin will be subject to severe sanctions, and this Court will perform its duty by

10  reporting this conduct to the California State Bar, as well as to investigate whether or not Ms. Lapin's

11  ability to practice in the Federal Courts of the Eastern District of California should be terminated.

12                                      **CONCLUSION AND ORDER**

13         For the reasons discussed above, this Court:

14     1.      DISMISSES with prejudice this action against Quality; and

15     2.      DIRECTS the clerk to enter judgment in favor of defendant Quality Loan Service

16             Corporation and against plaintiff George A. Saldate, Jr. in that there is no just reason to

17             delay to enter such judgment given that Mr. Saldate's claims against Quality are clear

18             and distinct from claims against the other defendants.  *See* F.R.Civ.P. 54(b).

19         IT IS SO ORDERED.

20  **Dated:    February 17, 2010               /s/ Lawrence J. O'Neill**
                                         UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

                                                   18